UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| MARIIA LEONTEVA, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) No. 4:26-cv-00043-SEB-KMB |
| | ) |
| KRISTI NOEM Secretary, U.S Department of Homeland Security, | ) |
| WARDEN SCOTT MAPLES Jailer, Clark County Jail, | ) |
| U.S. ATTORNEY GENERAL, | ) |
| | ) |
| Respondents. | ) |

**ORDER ADDRESSING PETITION
FOR A WRIT OF HABEAS CORPUS**

Mariia Leonteva is currently detained at the Clark County Jail at the direction of the U.S. Department of Homeland Security (DHS) despite an immigration judge having twice determined that Ms. Leonteva is entitled to asylum, a judgment from which DHS has appealed for a second time. Ms. Leonteva seeks a writ of habeas corpus directing DHS to release her from detention while her immigration proceedings continue.

By its text, the Immigration and Naturalization Act (INA) requires DHS to detain Ms. Leonteva for as long as her asylum case remains active. The Fifth Amendment to the Constitution affords an opportunity for a detainee to challenge her indefinite detention under the INA, at least on the facts of this case, where the government twice has granted the detainee asylum but nonetheless has extended her detention. Whether Ms. Leonteva's detention conflicts with her Fifth Amendment due process rights includes a consideration of factors that the parties did not address in their briefs and evidentiary submissions. Before a final order can issue, the Court directs

that the parties expand the record and supplement their briefs in the ways specified at the conclusion of this order.[1]

## I. Facts

Ms. Leonteva and her husband fled their native Russia in 2022 after he was detained, beaten, and threatened based on their opposition to Russia's war against Ukraine. They sought refuge in multiple European countries in 2022 and 2023. *See generally* dkt. 1-2.

In September 2023, Ms. Leonteva and her husband traveled to Mexico where they could make an appointment using DHS's CBP One app to seek asylum in the United States. Dkt. 1-2 at 3. On March 13, 2024, she entered the United States at her scheduled time and place and presented herself to immigration officers at a port of entry. Dkt. 5-1 at 59.

An asylum officer found that Ms. Leonteva had a credible fear of being persecuted if she returned to Mexico, the country from which she entered the United States. *Id.*; dkt. 5-1 at 1. DHS therefore "detained" Ms. Leonteva "for further consideration of" her "application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). That consideration took place in the context of a full removal proceeding under 8 U.S.C. § 1229a. Ms. Leonteva has been held in detention for the entirety of this process, which is now entering its third year.

On September 4, 2024, Immigration Judge, the Hon. R. Reid McKee, ruled that Ms. Leonteva was subject to removal from the United States. Dkt. 5-1 at 4–5. Ms. Leonteva filed multiple motions to challenge that decision and reopen her case, including filing an unopposed motion asserting ineffective assistance by her immigration attorney. Dkt. 1-2 at 2. Judge McKee granted her motion to reopen in November 2024, eight months into Ms. Leonteva's confinement.

---

[1] We acknowledge that our colleague, Judge Olson, reached a different conclusion on a related due-process question in a ruling handed down today. *See Demir v. Noem*, No. 2:26-cv-00086-JRO-MKK, dkt. 12 (S.D. Ind. Mar. 13, 2026). We regard the cases as factually distinguishable.

On February 13, 2025, Judge McKee granted Ms. Leonteva's asylum petition, assigning her asylum status under 8 U.S.C. § 1158. Dkt. 1-2. This mooted Ms. Leonteva's petitions for withholding of removal and for protection under the Convention Against Torture. *Id.*

A month later and a year into Ms. Leonteva's confinement, on March 17, 2025, DHS appealed Judge McKee's grant of asylum. Dkt. 5-1 at 23–25.

Fifteen months into Ms. Leonteva's confinement, on August 14, 2025, the Board of Immigration Appeals (BIA) remanded Ms. Leonteva's asylum petition to Judge McKee for further proceedings. Dkt. 5-1 at 29–32.

Eighteen months into Ms. Leonteva's confinement, on November 11, 2025, Judge McKee again granted Ms. Leonteva's asylum petition. Dkt. 1-3. Two weeks thereafter, DHS again appealed that determination. Dkt. 5-1 at 33–37. The appeal remains pending.

Ms. Leonteva is currently detained at the Clark County Jail by authority of DHS. She has been in custody for a total of two years since successfully demonstrating a credible fear of persecution and thirteen months after first being granted asylum, and four months after being granted asylum a second time. No timetable is set for a decision from the BIA, and no reason exists in the record to support a belief that the BIA decision will result in Ms. Leonteva's removal. Further, no reason exists to support a belief that the BIA decision will bring to a final conclusion the administrative process.

## II. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Ms. Leonteva contends that her continued detention violates 8 U.S.C. § 1231 as interpreted in *Zadvydas v. Davis*, 533 U.S. 678 (2001), and the Fifth Amendment's due process clause.

Respondents contend that 8 U.S.C. § 1225(b)(2)(A) requires Ms. Leonteva to remain in custody through the point of a resolution of her asylum and removal proceedings.

The Court agrees that the plain text of § 1225(b)(2) requires the government to continue to detain Ms. Leonteva through the conclusion of her asylum and removal proceedings. The Court also finds, however, that Ms. Leonteva, as an asylee whose detention has been extended by DHS, has a due-process right to challenge the indefinite detention the statutory text requires. Because the Court cannot determine whether the facts of Ms. Leonteva's detention entitle her to an additional process to prevent unconstitutional detention, the Court directs the parties to expand the evidentiary record and supplement their briefs.

### A.     8 U.S.C. § 1231 and *Zadvydas*

Ms. Leonteva argues that 8 U.S.C. § 1231, as interpreted by *Zadvydas*, governs her detention. By its terms, § 1231 governs detention of "aliens" who are "ordered removed." 8 U.S.C. § 1231(a)(1)(A). Section 1231(a) *requires* the government to detain an individual for a 90-day removal. After the 90-day period, the individual "*may* be detained." 8 U.S.C. § 1231(a)(6) (emphasis added). The text of the statute places no limit on that detention.

In *Zadvydas*, twenty-five years ago, the Supreme Court interpreted § 1231(a)(6) as containing an implicit, Constitutional limit on post-removal period detention authority. The Supreme Court held that the statute grants the Attorney General authority to detain aliens for the express purpose of facilitating their removal. 533 U.S. at 697. Therefore, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. If detention "exceeds a period reasonably necessary to secure removal," then continued detention is no longer authorized by statute." *Id.* at 699–700. To aid courts in determining when removal is reasonably foreseeable, the Supreme Court recognized a "presumptively reasonable period of

4

detention" of six months. *Id.* at 700–01. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

Ms. Leonteva argues that she must be released because she has been detained for much longer than six months and her removal is not reasonably foreseeable. Dkt. 8 ¶¶ 34–41. As a factual matter, she has been detained for almost two years, including a year-and-a-half after Judge McKee first ordered her removed. She has been granted asylum twice, and there is no indication that her grant of asylum is immediately likely to be nullified.

These facts take her case outside the text of § 1231(a) and the holding in *Zadvydas* because Ms. Leonteva is not subject to a final removal order following Judge McKee's order reopening the removal proceeding and granting her asylum. As we discuss below, while *Zadvydas*'s logic has some application to this case, neither *Zadvydas* nor § 1231(a) governs her continued detention.

**B.     8 U.S.C. §§ 1225(b)(1)(B)(ii) and 1225(b)(2)(A)**

Respondents argue that the Immigration and Nationality Act requires that Ms. Leonteva remain in DHS custody until her removal proceeding is resolved based on the plain language of the statute which allows for no other interpretation.

We recount again the facts of Ms. Leonteva's history of interactions with Immigration officials:  Ms. Leonteva scheduled an appointment to enter the United States and presented herself to immigration officials at a port of entry. She came with an apparently compelling asylum claim but without papers entitling her to lawful admission. An asylum officer considered her claim and determined that she had a credible fear of persecution if she were removed. Because of her credible fear determination, 8 U.S.C. § 1225(b)(1)(B)(ii) unambiguously directed that Ms. Leonteva "*shall* be detained for further consideration of the application for asylum." Because she lacked papers,

§ 1225(b)(2)(A) also directed that she "*shall* be detained for a" removal "proceeding under" 8 U.S.C. § 1229a.

The government appears to have followed that procedure: An immigration officer initiated removal proceedings; Judge McKee ordered her removed but subsequently reconsidered that order granting her asylum claim—twice. These actions fully comported with the statutory requirements. Irrespective of whether DHS currently has under review Ms. Leonteva's asylum application or is finalizing her removal proceeding—or both—§ 1225(b) unambiguously requires that she remain in custody. Therefore, if Ms. Leonteva is entitled to habeas corpus relief, it must be attributable to her wrongful detention under the Constitution and due process requirements, not pursuant to the INA.

**C.     Due Process Protection Against Indefinite Detention**

The crux of Ms. Leonteva's Constitutional claim is that her prolonged detention violates her Fifth Amendment due process rights. *See* dkt. 1 ¶¶ 34–39. Although *Zadvydas* does not explicitly limit the government's § 1225(b) detention authority, its analysis applies to Ms. Leontevas's detention.

    1. *Zadvydas*

*Zadvydas* involves issues arising in the context of a statutory interpretation, including a discussion of due process principles. "A statute permitting indefinite detention of an alien," the Supreme Court wrote, "would raise a serious constitutional problem." 533 U.S. at 690. The Court further opined that civil detention violates the Fifth Amendment unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" *Id.* (quoting *Kansas v. Hendricks*, 521 U.S. 346, 356 (1997)).

The Supreme Court then examined two possible justifications for detention under § 1231: to prevent flight and protect the community from potential danger, ruling that flight prevention did not justify indefinite detention if the detainee's removal was "a remote possibility." *Id.* Community protection justifies indefinite detention only if special circumstances—such as mental illness—create the danger. *Id.* at 691. The *Zadvydas* opinion concluded as follows: "An alien's liberty interest is, at the least, strong enough to raise a serious question as to whether, irrespective of the procedures used, . . . the Constitution permits detention that is indefinite and potentially permanent." *Id.* at 696.

*Zadvydas* was not ultimately decided on due process grounds. Rather, the Court found that, in light of due process considerations, Congress would not have intended to permit unlimited civil detention under § 1231 without affording some additional due process rights. *Id.* at 697–99. The statute under review was interpretated to implicitly authorize detention only to the point when "removal is no longer reasonably foreseeable." *Id.* at 699.

### 2. Applying *Zadvydas* to Ms. Leonteva's Circumstances

*Zadvydas* solved a due process problem by interpreting § 1231 "in such a way as to avoid a serious constitutional threat." *Id.* That path is not available to Ms. Leonteva. In *Jennings v. Rodriguez*, 583 U.S. 281, 298 (2018), the Supreme Court ruled that there is only one proper interpretation of § 1225(b), and it requires detention for the duration of the immigration proceeding. *Id.* at 301.

*Zadvydas* supports Ms. Leonteva because the due process interests at the heart of *Zadvydas* apply to Ms. Leonteva's case.

The holding in *Zadvydas* flows from its pronouncement that a "statute permitting indefinite detention of an alien would raise a serious constitutional problem." 533 U.S. at 690. It is clear that Ms. Leonteva's detention has, indeed, reached the point of being indefinite, having been jailed for a period of two years, despite twice being granted asylum. DHS's appeals of those orders granting asylum have not been finally adjudicated since the second appeal is still pending. We have been provided no timeline for a final decision, and in fact, there is no guarantee that the BIA's decision, whenever it issues, will actually conclude the case. We are mindful that in *Jennings*, the Court distinguished *Zadvydas*'s § 1231(a)(6) from §1225(b) (583 U.S. at 299), wherein, the Court characterized "the permissible length of detention under § 1231(a)(6)" as "unclear," but held that § 1225(b) "provide[s] for detention for a specified period of time"—namely, the time necessary to complete an asylum or removal proceeding. *Id*. In any event, the Court did not rule that the due process concerns central to its holding in *Zadvydas* are inapplicable to § 1225(b).[2] Sidestepping the need for a constitutional analysis, the Court interpretated the statutory text of § 1225(b) to permit/require detention through the point in time where the asylum or removal proceedings are completed. *Id.* at 312. Based on Ms. Leonteva's experience, it is clear that § 1225(b) permits indefinite detention as readily as does § 1231(a)(6).

*Zadvydas* embodies the principle that civil detention violates the Fifth Amendment unless "a special justification . . . outweighs the 'individual's constitutionally protected interest in avoiding physical restraint.'" 533 U.S. at 690. In ways similar to those presented in *Zadvydas*, Ms. Leonteva's continued detention does not appear to be tied to ensuring her continued attendance at and participation in removal proceedings. Judge McKee granted her asylum request which

---

[2] Respondents appear to acknowledge as much in their brief: "*So long as it is within the bounds of due process*, *Jennings* precludes this Court from reading an implicit time limitation on the permissible length of detention under 8 U.S.C. § 1225(b)." Dkt. 5 at 7 (emphasis added).

8

signaled her intention to remain in the United States. In fact, by statute, a dismissal of her application for asylum is authorized, should she fail to appear for an interview or hearing. 8 U.S.C. § 1158(d)(5)(A)(v). Thus, her detention appears both unrelated to and unnecessary in ensuring Ms. Leonteva's continued participation in the asylum process.

Ms. Leonteva's detention also does not appear to be connected to any community protection concerns. Indeed, before granting asylum, Judge McKee considered factors such as whether any reason existed to believe Ms. Leonteva had committed serious crimes or posed a danger to the security of the United States. 8 U.S.C. § 1158(b)(2)(A). Having twice found her entitled to asylum, he obviously concluded that Ms. Leonteva presented no threat to community safety.

Extending *Zadvydas*'s due process analysis to this case does not require the government to immediately release Ms. Leonteva. Rather, it allows Ms. Leonteva to challenge her continued detention on due process grounds to test whether it is justified. If some unique circumstance suggests that she is a flight risk or a danger to the community, the government could proffer those facts during a bond hearing, allowing an immigration judge to rule on the necessity of her continued detention.

For these reasons, we hold that, pursuant to the Fifth Amendment, Ms. Leonteva is entitled to challenge her continued detention, pursuant to § 1225(b)(1)(B)(ii) or § 1225(b)(2)(A), allowing the immigration judge to take appropriate notice of the fact of her two prior grants of asylum as well as the government's delay in appealing the most recent asylum requests thereby causing her to be detained indefinitely.

### 3. Support for Finding Due Process Protections Against § 1225(b) Detention

In ruling that the Fifth Amendment permits due process challenges to detention under § 1225(b), we find ourselves in good judicial company.

### a. § 1225(b)(1)(B)(ii)

The majority of courts who have considered this issue have determined that the due process protections recognized in *Zadvydas* prohibit indefinite detention under § 1225(b)(1)(B)(ii) as violative of due process requirements. *See JOPG v. Warden*, No. 1:25-CV-01751-KES-SKO (HC), 2026 WL 477994, at *3 (E.D. Cal. Feb. 20, 2026) ("This Court and '[n]early all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, will—at some point—violate the right to due process.'" (quoting *Maliwat v. Scott*, 2025 WL 2256711, at *3 (W.D. Wash. Aug. 7, 2025));[3] *Rashid v. Trump*, 807 F. Supp. 3d 349, 363 (D. Vt. 2025) ("Unreasonably Prolonged Detention Under § 1225(b) Violates Due Process"); *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 848 (E.D. Va. 2020) ("[S]ome constitutionally adequate process must be provided; and the Court concludes, based on *Zadvydas*, *Demore*, and *Thuraissigiam*, that Petitioner is not foreclosed from the relief he seeks with respect to his detention either because he is an entering alien, as opposed to an entered alien, or because there remains a discernable statutory purpose for his detention."); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1106 (W.D. Wash. 2019) ("[N]umerous federal district courts have provided bond hearings to arriving noncitizens in prolonged detention in the wake of *Jennings*.");[4] *Bermudez Paiz v. Decker*, No. 18CV4759GHWBCM, 2018 WL 6928794, at *10 (S.D.N.Y. Dec. 27, 2018) ("Most judges

---

[3] From the Eastern District of California, *see also Mkrtchyan v. Warden*, No. 1:25-CV-01666-SKO (HC), 2026 WL 292645 (E.D. Cal. Feb. 4, 2026); *Khaco v. Warden*, No. 1:25-CV-1659 CSK P, 2026 WL 295551 (E.D. Cal. Feb. 4, 2026); *Mohammed v. Warden*, No. 1:26-CV-00118-DJC-CSK, 2026 WL 192368 (E.D. Cal. Jan. 26, 2026); *Singh v. Warden*, No. 1:25-CV-01632-SKO (HC), 2026 WL 181553 (E.D. Cal. Jan. 23, 2026); *Manukyan v. Warden*, No. 1:25-CV-01394-SKO (HC), 2026 WL 84079 (E.D. Cal. Jan. 12, 2026); *Idiev v. Warden*, No. 1:25-CV-01030-SKO (HC), 2025 WL 3089349 (E.D. Cal. Nov. 5, 2025).

[4] From the Western District of Washington, *see also Amhirra v. Warden*, No. 2:25-CV-01376-TL, 2025 WL 3718994 (W.D. Wash. Dec. 23, 2025); *Toktosunov v. Wamsley*, No. 2:25-CV-1724-TL, 2025 WL 3492858, at *2 (W.D. Wash. Dec. 5, 2025).

10

who have squarely faced the question have applied the same logic to § 1225(b), holding that arriving aliens, like criminal aliens, cannot be detained for an unreasonably prolonged period of time without a bond hearing.");[5] *Abdi v. Duke*, 280 F. Supp. 3d 373, 393 (W.D.N.Y. 2017) ("The majority of the courts in this Circuit that have considered the issue agree, and this Court finds their reasoning . . . persuasive. Section 1225(b) does not permit the indefinite detention of individuals detained under that statute.").[6]

    Among those courts finding no due process violation, many nonetheless acknowledge or suggest that there are circumstances under which indefinite detention would be violative of Fifth Amendment due process standards. *See Gevorg v. Warden*, No. 1:25-CV-00992-HBK (HC), 2025 WL 3496436, at *8 (E.D. Cal. Dec. 5, 2025) ("Therefore, the Court finds no due process violation in Petitioner's continued detention under § 1225(b)(1)(B)(ii) without a bond hearing *currently*." (emphasis added)); *Doe v. Andrews*, No. 1:25-CV-00333-JLT-HBK (HC), 2025 WL 3280777, at *12 (E.D. Cal. Nov. 25, 2025) (same); *Contreras v. Oddo*, No. 3:25-CV-162, 2025 WL 2104428, at *6 (W.D. Pa. July 28, 2025) ("Petitioner's detention [of fewer than three months] has not become so prolonged that it can be considered indefinite detention. Accordingly, the Court declines to extend *Zadvydas* to Petitioner's case."); *Aracely, R. v. Nielsen*, 319 F. Supp. 3d 110, 144–45 (D.D.C. 2018) ("According to Defendants, Mikailu J.'s asylum petition was denied within a year of arriving at the border, . . . as was Sadat I.'s . . . . Their circumstances suggest a more abbreviated detention period than the period faced by the *Zadvydas* plaintiffs, and Plaintiffs have not provided

---

[5] From the Southern District of New York, *see also Alberto v. Decker*, No. 17-CV-2604 (PKC), 2017 WL 6210785, at *7 (S.D.N.Y. Nov. 21, 2017) ("This Court need not decide whether there is or ought to be a bright line test under section 1225(b). Considering the circumstances of Alberto's case, the indefinite detention without a hearing is a deprivation of due process of law.").

[6] Order clarified on other grounds *sub nom. Abdi v. Nielsen*, 287 F. Supp. 3d 327 (W.D.N.Y. 2018); vacated in part on other grounds *sub nom. Abdi v. McAleenan*, 405 F. Supp. 3d 467 (W.D.N.Y. 2019).

data on the average length of detention under § 1225(b)(1)(B)(ii). These factual differences render Plaintiffs' detention less constitutionally problematic than the plaintiffs' detention in *Zadvydas*."); *Doe v. Rodriguez*, No. CV 17-1709 (JLL), 2018 WL 620898, at *8 (D.N.J. Jan. 29, 2018) ("[D]etention for less than a year under § 1225(b) does not violate Due Process and Petitioner is therefore not entitled to relief based on the length of his detention at this time.").

Our research has disclosed only two decisions that fail to extend *Zadvydas*'s reasoning to §1225 detention situations, but their reasoning involved distinguishable facts from those that are present here. *See Petgrave v. Aleman*, 529 F. Supp. 3d 665, 679 (S.D. Tex. 2021) (petitioner entered without inspection; was apprehended at the border by federal agents; and had been detained for less than a year when he filed his petition); *Thevarajah v. McElroy*, No. 01-CV-3009, 2002 WL 923914, at *5 (E.D.N.Y. Apr. 30, 2002) ("Furthermore, petitioner has been in custody this long primarily because he has exercised his right to litigate his case to the fullest. *If he had not chosen to appeal* the IJ's removal orders, petitioner would long since have been released . . . .") (emphasis added).

In addition to the overwhelming weight of authority in support of our analysis, we also find persuasive the following explication in *Rashid*:

> [M]andatory detention without an initial bond hearing may not pose a problem at first; expedited removal of arriving noncitizens and the summary removal of stowaways generally occur swiftly, and mandatory detention without a bond hearing may serve the legitimate function of preventing flight during that brief phase. Even for noncitizens who establish a credible fear of persecution, it may take just a few months for the immigration court to reach a final decision on the asylum application. In this case, for instance, Mr. Rashid received a grant of asylum approximately four months after he arrived in the United States. [. . .] In the case of an appeal, however, detention may stretch on indefinitely. The individual's liberty interest increases over time, and the risk of an erroneous deprivation of liberty may become more egregious, just as it does for noncitizens detained under [other authority].

12

807 F. Supp. 3d at 365 (internal citation omitted). This reasoning is clearly applicable to Ms. Leonteva's situation. We therefore join the Court in *Rashid* and the many others noted above in ruling that asylees who claim that their detention has been prolonged beyond the limits set by the due process clause may challenge their continued detention under § 1225(b)(1)(B)(ii).

### b. As Applied to § 1225(b)(2)(A)

Ms. Leonteva was subject both to an asylum proceeding under § 1225(b)(1)(B)(ii) and to a removal proceeding under § 1225(b)(2)(A). Both statutes call for her continued—in her case, indefinite—detention. In finding that Ms. Leonteva is entitled to challenge her continued detention under the due process clause, the Court once again finds support for this conclusion in numerous similar cases applying due-process constraints to § 1225(b)(2)(A) detention. *See Tonoyan v. Andrews*, No. 1:25-CV-00815-SKO (HC), 2025 WL 3013684, at *3 (E.D. Cal. Oct. 28, 2025) (applying *Mathews v. Eldridge*, 424 U.S. 319 (1976)); *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853, 858 (D. Minn. 2019) ("[E]veryone seems to agree that, under the Due Process Clause, neither group of aliens can be detained indefinitely (at least without some kind of showing that they are likely to flee or harm the community)."); *Perez v. Decker*, No. 18-CV-5279 (VEC), 2018 WL 3991497, at *4 (S.D.N.Y. Aug. 20, 2018) ("[A]s this and other courts have previously decided, individuals detained pursuant to § 1225(b) possess sufficient Due Process rights that they can challenge their mandatory, unreviewed detention."); *Cruz v. Nalls-Castillo*, No. CV 16-1587 (MCA), 2017 WL 6698709, at *5 (D.N.J. Sept. 19, 2017) ("Because Petitioner has been detained over twenty eight months, well beyond the periods considered by other Courts in this District, Petitioner is entitled to an individualized bond hearing before an immigration judge."); *Swarray v. Lowe*, No. 1:17-CV-0970, 2017 WL 3581710, at *1 (M.D. Pa. Aug. 18, 2017) ("Upon review, the court notes that many of the cases concluded that due process protection for a § 1225(b)(2)(A)

detainee is subject to consideration of reasonableness of the length of detention of that alien."); *Maldonado v. Macias*, 150 F. Supp. 3d 788, 808 (W.D. Tex. 2015) ("Because aliens detained under § 1225(b)(2)(A) have no access to an individualized determination regarding whether they are properly placed in the § 1225(b)(2)(A) category or properly detained because they present a flight risk and a danger to the community, the Court finds that detention pursuant to § 1225(b)(2)(A) is subject to a reasonable time limitation.").[7]

We do *not* address the question of whether the due process clause permits challenges to § 1225(b)(2)(A) detention under any other circumstances. Where, however, the detainee has been granted asylum and removal proceedings have become moot, and where detention continues because DHS has lodged an appeal, which remains under review, the Court finds that the Fifth Amendment permits a challenge to the asylee's continued detention under § 1225(b)(2)(A).

### 4. Alignment with Immigration Precedents

Having determined that the Fifth Amendment's due process clause permits Ms. Leonteva to challenge her continued detention under 8 U.S.C. §§ 1225(b)(1)(B)(ii) and (b)(2)(A), we address whether of the Fifth Amendment conflicts with prevailing Supreme Court precedent addressing and resolving immigration detention issues generally.

#### a. The Entry Fiction

Certain courts have reasoned that the Fifth Amendment provides no additional procedural protections to aliens who, like Ms. Leonteva, were detained immediately upon arrival at a port of entry and remain in custody during their asylum or removal proceedings. *See, e.g.*, *Acosta v. Arteta*,

---

[7] *But see Saucedo Carera v. Bondi*, No. 1:26-CV-00039, 2026 WL 508084, at *5 (D.N.D. Feb. 24, 2026) ("[T]his Court has ruled Section 1225(b)(2)(A) squarely governs Petitioner's immediate detention. Therefore, he is not being detained absent due process because being detained pursuant to a constitutionally legitimate statute promulgated by Congress is not a due process violation.") (discussing *Demore v. Kim*, 538 U.S. 510 (2003)).

No. 1:25-CV-9916 (MKV), 2026 WL 263470, at *7 (S.D.N.Y. Feb. 2, 2026) ("This Court is bound by the Supreme Court's holding in *Mezei* that Congress defines the process due to an alien who has not been admitted into the United States."). This theory is sometimes referred to as the "entry fiction"[8] that holds that aliens who arrive at the U.S. border but are not admitted are protected by the Fifth Amendment, but they are entitled to no more process than what Congress has written into its statutes. *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (For "an alien denied entry," due process is only "the procedure authorized by Congress." (quoting *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)). This authority to detain derives from the executive and judicial branches' "fundamental sovereign" authority "to expel or exclude aliens." *Id.* at 210. Because the "right to enter the United States depends on the congressional will," continued and even indefinite exclusion that complies with the letter of the statute does not deprive a detainee "of any statutory or constitutional right." *Id.* at 215–16.

We view this fiction as inapplicable to the circumstances of our case. We repeat: Ms. Leonteva was taken into custody at a port of entry and remains in custody and the government has not exercised its statutory authority to exclude her throughout the entirety of that time. Congress has authorized the Attorney General to grant asylum. 8 U.S.C. § 1158(b)(1)(A). Once asylum is granted, the Attorney General must authorize the asylee to enter and work inside the United States. 8 U.S.C. § 1158(c)(1). The Attorney General's designee, Judge McKee, granted Ms. Leonteva asylum *twice*. She remains in custody only because DHS has requested for a second time that a higher authority reverse the grant of asylum and that second appeal remains pending.

---

[8] *See, e.g.*, *Cruz Rodriguez v. Olson*, No. 1:25-cv-12961, 2026 WL 63613, at *9 (N.D. Ill. Jan. 8, 2026) ("[T]he Supreme Court applies what is called an 'entry fiction.' Namely, despite the alien being present in the United States, he is 'treated for due process purposes as if stopped at the border.'") (quoting *Dep't of Homeland Sec. v. Thuraissigiam*, 59 U.S. 103, 139 (2020)).

The government did not act to turn Ms. Leonteva away from entry into the U.S. Indeed, her entry was officially authorized, based on the relevant statutes, and her admission was placed on indefinite hold. These facts make our case distinguishable from the holding in *Mezei*.[9]

The *Zadvydas* Court included in its analysis instances of "aliens who were admitted to the United States but subsequently ordered removed." 533 U.S. at 682. "Aliens who have not yet gained initial admission to this country would present a very different question." *Id.*

To the extent *Zadvydas* is based on the entry fiction, our analysis creates no conflict. As noted previously, Ms. Leonteva's status is not merely that of an arriving alien who has not yet gained initial admission to the country. The Attorney General has taken the important step of twice granting her asylum petition. Further, she is not an arriving alien seeking admission. Much like the petitioners in *Zadvydas*, one arm of the government has welcomed Ms. Leonteva to our country, while the other seeks to exclude her. The holding in *Zadvydas* supports Ms. Leonteva's right to challenge her indefinite detention under the due process clause of the Fifth Amendment.

More recently, the Supreme Court applied the entry fiction theory in *Department of Homeland Security v. Thuraissigiam*, 591 U.S. 103 (2020), but the factual circumstances there made that decision inapplicable to our case as well. Unlike Ms. Leonteva's situation, the immigration judge *denied* Thuraissigiam's asylum claim, which gave rise to his due-process

---

[9] *Cf. Al-Thuraya v. Warden*, No. 25-CV-2582 (AS), 2025 WL 2858422, at *4 (S.D.N.Y. Oct. 9, 2025) ("Unlike *Mezei* and *Thuraissigiam*, Al-Thuraya has not been definitively 'denied entry.' . . . [A]lthough the agency has denied him relief on his full-fledged asylum petition, he timely sought relief before the Second Circuit, which has stayed his removal; and if the Second Circuit rules in his favor, he may be afforded relief and permitted to stay in this country. The Government lacks the authority to remove Al-Thuraya until all of that gets hashed out. In other words, Al-Thuraya has neither been admitted (*i.e.*, granted asylum) nor excluded (*i.e.*, denied asylum, given the pendency of his petition for review). So, the concern animating the entry fiction exception—that is, the political branches' authority to legally admit or exclude noncitizens— doesn't apply here.").

challenge. *Id.* at 138. He did not challenge his indefinite detention; his challenge was as a person facing removal, not as an asylee whose entry was prolonged.

### b. *Demore*'s Refusal to Extend *Zadvydas*

The respondents rely extensively on the holding in *Demore v. Kim*, 538 U.S. 510 (2003). The Court in *Demore* reviewed 8 U.S.C. § 1226(c), which provides for mandatory unlimited detention for inadmissible criminal aliens. The Supreme Court declined to extend *Zadvydas*'s protections against indefinite detention to § 1226(c) detainees, reasoning that the government possesses unquestioned authority to "constitutionally detain deportable aliens during the limited period necessary for their removal proceedings." *Id.* at 526.

We conclude that neither the facts nor the reasoning of *Demore* apply to Ms. Leonteva's case. She is not being detained under § 1226(c), and she is not a deportable alien. As she has been throughout her time in detention—she is an asylee whose admission DHS continues to challenge on appeal. According to her a due process right to challenge her continued detention does not conflict with *Demore*.

### D. Constitutionality of Ms. Leonteva's Detention

Having determined that Ms. Leonteva is entitled to challenge her extended detention under the Fifth Amendment's due process clause, we next address whether Ms. Leonteva's continued detention without according to her her due process rights violates the Constitution. In undertaking this analysis, "most courts consider . . . (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Jamal A.*, 358 F. Supp. 3d at 858–59.

The parties have not addressed these specific factors in their submissions. We likely could take judicial notice of some of these facts, i.e., the length of Ms. Leonteva's detention and the place of and reason for its continuation, but other facts, i.e., her conditions of confinement at the Clark County Jail, are not known to us. Thus, an expansion of the record is necessary.[10] Each side is allowed **seven days** within which to supplement the record to respond to the six factors listed above, along with any corroborative evidence. Each side is granted **four days** following their initial supplemental filings to respond to its adversary's submission(s).

**E.     Remedy**

If the Court ultimately determines that, pursuant to the Fifth Amendment, Ms. Leonteva is entitled to relief from her continued detention, the Court must resolve the issue of what specific remedy should apply. Courts that have ruled that an individualized bond hearing is an appropriate remedy are able to address these considerations. *See Rashid*, 807 F. Supp. 3d at 371–72; *Mbalivoto*, 527 F. Supp. 3d at 851 ("Petitioner's continued detention without an individualized bond hearing is constitutionally unreasonable."); *Jamal A.*, 358 F. Supp. at 860 ("[C]ontinuing to detain Jamal without giving him a bond hearing would violate his rights under the Due Process Clause."); *Banda*, 385 F. Supp. 3d at 1120 ("The Court thus concludes that petitioner's continued mandatory detention under § 1225(b) has become unreasonable and that due process requires the Government to provide him with a bond hearing."). Respondents, in fact, agree that, if a Constitutional violation has occurred, "the proper remedy would be to order a bond hearing." Dkt. 5 at 8.

Understandably, Ms. Leonteva insists that her detention has lasted too long already and that she is entitled to immediate release. We are not unsympathetic to her claim, especially since

---

[10] Rule 7, *Rules Governing § 2254 Cases* ("If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials relating to the petition."); Rule 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition" not brought under § 2254.).

18

the "typical remedy" for unlawful detention is release. *Munaf v. Geren*, 553 U.S. 674, 693 (2008). However, any relief afforded through a grant of habeas corpus must be "appropriate to the violation." *Waller v. Georgia*, 467 U.S. 39, 50 (1984). In this case, the government clearly had the authority to detain Ms. Leonteva initially; in fact, it still has some level of lawful authority to detain her even now. But she has been detained for two years, with no end in sight, after being twice granted asylum. If the record, after the parties' supplementation, demonstrates that her due process rights have been violated by her unnecessary and indefinite detention, a bond hearing would offer an opportunity for her to demonstrate that her continued detention is not tied to any legitimate immigration related purpose, which would comport with the dictates of *Zadvydas*.[11]

### III. Conclusion

We have ruled, as explained above, that Ms. Leonteva is entitled to challenge her continued, extended detention under the Fifth Amendment's due process clause. Whether she is entitled to relief under the Fifth Amendment remains undecided, pending the parties' submission of supplemental information as requested by the Court.

The parties are each allowed **seven days** within which to supplement the record with regard to Ms. Leonteva's entitlement to relief pursuant to the six factors in *Jamal A.*, supra, along with any corroborative evidence. Thereafter, each side is allowed **four days within which to** respond

---

[11] Notably, Ms. Leonteva argues in her reply, dkt. 6, that her detention is governed by 8 U.S.C. § 1226(a). That is incorrect; as discussed at length above, Ms. Leonteva is detained under § 1225(b). Nevertheless, § 1226(a) authorizes detention in certain circumstances but also permits discretionary release on bond. In other words, under Ms. Leonteva's own argument, she is entitled only to a bond hearing, not immediate release.

to its adversary's submission(s). Following the Court's review of these supplemental submissions, a final decision on the writ of habeas corpus will issue.

**IT IS SO ORDERED.**

Date: 3/13/2026

*Sarah Evans Barker*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Brittni Rivera
Kriezelman Burton and Associates
brivera@krilaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov