UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

MARIIA LEONTEVA,                                    )
                                                   )
                   Petitioner,                     )
                                                   )
            v.                                     )     No. 4:26-cv-00043-SEB-KMB
                                                   )
KRISTI NOEM Secretary, U.S Department of           )
Homeland Security, *et al.*,                       )
                                                   )
                   Respondents.                    )

**ORDER GRANTING IN PART PETITION FOR WRIT OF HABEAS CORPUS**

Mariia Leonteva has petitioned for a writ of habeas corpus. She challenges her continued detention at the Clark County Jail as the U.S. Department of Homeland Security (DHS) pursues its second appeal of an immigration judge's decision granting her asylum application.

In a previous order, we held that the Fifth Amendment allows Ms. Leonteva to challenge her continued detention on due process grounds and identified six factors that will determine whether she must receive a bond hearing. Dkt. 10. As ordered, the parties have expanded the evidentiary record and supplemented their briefs to address those factors. We now find that Ms. Leonteva's continued detention without a bond hearing would violate the Fifth Amendment and therefore grant her petition.

## I. Background

We stated the facts of Ms. Leonteva's case thoroughly in our previous order, dkt. 10, and revisit them here only to provide context for the next phase of the analysis.

Ms. Leonteva entered the United States on March 13, 2024, claimed asylum, and has been jailed ever since. An immigration judge ruled in September 2024 that Ms. Leonteva was subject to

removal from the United States. In November 2024, the immigration judge granted Ms. Leonteva's motion to reopen the case based on ineffective assistance by her attorney.

On February 13, 2025, the immigration judge granted Ms. Leonteva's asylum petition. A month later, DHS appealed. The Board of Immigration Appeals (BIA) remanded the matter to the immigration court on August 14, 2025, for further consideration.

On November 11, 2025, the immigration judge again granted Ms. Leonteva's asylum petition. DHS filed its appeal of that determination two weeks later. That appeal remains pending with no timetable for a decision. Respondents report that the BIA has not yet set a briefing schedule. Dkt. 12 at 2.

Ms. Leonteva filed a habeas petition on February 17, 2026. Dkt. 1. On March 13, we determined that Ms. Leonteva is detained under 8 U.S.C. § 1225(b)(1)(B)(ii) and (b)(2)(A). Dkt. 10 at 5–6. We also ruled that the Fifth Amendment protects Ms. Leonteva against indefinite detention and that she may be entitled to additional process—to wit, a bond hearing—depending on the outcome of the multi-factor analysis laid out in *Jamal A. v. Whitaker*, 358 F. Supp. 3d 853 (D. Minn. 2019). *Id.* at 7–18. Because the parties had not briefed those specific issues, rendering the evidentiary record incomplete, we directed the parties pursuant to Rule 7 to expand the record and supplement their briefs. *Id.* at 17–20.

Ms. Leonteva filed her supplemental brief and additional evidence on March 19. Dkt. 11. Respondents filed their evidence and a supplemental brief, including responses to Ms. Leonteva's supplement, the following day. Dkt. 12. Ms. Leonteva replied on March 24. Dkt. 13. The matter is now fully briefed.

2

## II. Analysis

A federal court may issue a writ of habeas corpus when the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Applying the logic of *Zadvydas v. Davis*, 533 U.S. 678 (2001), we held:

> Pursuant to the Fifth Amendment, Ms. Leonteva is entitled to challenge her continued detention, pursuant to § 1225(b)(1)(B)(ii) or § 1225(b)(2)(A), allowing the immigration judge to take appropriate notice of the fact of her two prior grants of asylum as well as the government's delay in appealing the most recent asylum requests thereby causing her to be detained indefinitely.

Dkt. 10 at 9.

In determining whether Ms. Leonteva's continued detention violates the Fifth Amendment thus requiring additional process, the Court must consider the following factors:

> (1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal.

*Id.* at 17 (quoting *Jamal A.*, 358 F. Supp. 3d at 858–59). With the benefit of the parties' supplements and the expanded record, we now undertake our analysis of the six factors.

### A.    Total Length of Detention

The parties agree that the first factor, the total length of detention, weighs in Ms. Leonteva's favor. *See* dkt. 12 at 1–2. Ms. Leonteva has been detained continuously for two years, and other courts have consistently found that much shorter periods warranted relief. *See, e.g., Rashid v. Trump*, 807 F. Supp. 3d 349, 367 (D. Vt. 2025) (15 months); *Mbalivoto v. Holt*, 527 F. Supp. 3d 838, 841 (E.D. Va. 2020) (22 months); *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1111 (W.D. Wash. 2019) (17 months).

**B.    Likely Duration of Future Detention**

The second factor, the likely duration of future detention, also weighs in Ms. Leonteva's favor. Respondents state the average adjudication timeline for an appeal involving a detained noncitizen is 52 days. Dkt. 12 at 2. DHS's current appeal has already been pending for four months—more than *double* that average—and Respondents concede that the BIA has not yet even set a briefing schedule. *Id.* Moreover, it is far from clear that the BIA's decision will close Ms. Leonteva's case. The BIA has previously remanded the case for further proceedings; the Court knows of no limitation on DHS's ability to appeal again or the BIA's ability to issue successive remands. In short, it is unlikely that the BIA will resolve DHS's appeal, or that Ms. Leonteva will be released from detention, any time soon.

**C.    Conditions of Detention**

The third factor, conditions of detention, also weighs in Ms. Leonteva's favor based on the limited information the parties have provided. "'The more that the conditions under which the alien is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing.'" *Jamal A.*, 358 F. Supp. 3d at 860 (quoting *Muse v. Sessions*, 409 F. Supp. 3d 707, 717 (D. Minn. 2018)). Ms. Leonteva is detained in the Clark County Jail, a facility for individuals charged with and convicted of crimes. So far as we know, Ms. Leonteva is not being housed separately from criminal detainees or are her conditions or treatment materially different from the criminal detainees'.

Ms. Leonteva's submissions regarding conditions at other immigration detention facilities are not relevant. *See* dkt. 11-1. As Respondents correctly note, conditions at other facilities are not germane to a consideration of Ms. Leonteva's detention.

The affidavit of her husband, describing aspects of Ms. Leonteva's experience as she relayed them to him, lacks persuasive force given that he apparently has never personally observed the Jail's conditions. Dkt. 11-2; Fed. R. Evid. 602. The respondents correctly object that his statements are therefore inadmissible hearsay.

Respondents' attempt to show that the Jail's officials have, in contracting with DHS to house immigration detainees, agreed to maintain certain standards is unpersuasive because the contract tells only what conditions the Jail's staff agreed to maintain, not the conditions Ms. Leonteva has actually experienced. Dkt. 12-2. Respondents do not in any event contend that the conditions the Jail's officials agreed to maintain are substantially different from the conditions of criminal confinement typically associated with detention in a county jail.

In sum, neither party's supplemental submissions change the conclusion that Ms. Leonteva's conditions are in all material respects tantamount to criminal confinement.

### D.    Responsibility for Delay

The fourth and fifth factors require the Court to consider the cause of the delays in conducting the administrative proceedings. Nothing indicates that either side has acted in bad faith in prolonging Ms. Leonteva's case; even so, we find that these factors favor Ms. Leonteva because the government bears the greater responsibility for the extended time these proceedings have dragged on.

Respondents concede that Ms. Leonteva is not responsible for any of the delay that has occurred. Dkt. 12 at 4. The missed deadlines by Ms. Leonteva's first representative apparently contributed to the immigration judge's initial order of removal. Moreover, Ms. Leonteva's case sat idle for a period of at least two months while she sought to challenge the removal and reopen the

case in light of her first representative's errors. These delays are not attributable to Ms. Leonteva, but neither are they attributable to DHS.

This litigation has been pending for more than 13 months—a majority of Ms. Leonteva's total time in detention—following the immigration judge's first grant of asylum. After the immigration judge granted Ms. Leonteva's motion to reopen, her case has spent about six months awaiting action from the immigration judge[1] compared to about ten months (and counting) awaiting action from the BIA.[2] No one disputes that DHS has a right to appeal the immigration judge's decisions and nothing indicates that DHS has been intentionally dilatory or otherwise acted in bad faith. Dkt. 12 at 4–5. But the inescapable fact is that Ms. Leonteva's prolonged detention is attributable more to DHS's pursuit of appeals than to any action by Ms. Leonteva.

**E.      Likelihood of Removal**

The sixth factor—the likelihood that the administrative proceeding ends with a final removal order—does not redound to the benefit of either side. We have no view regarding the merits of Ms. Leonteva's asylum claim, but, given that the immigration judge has twice granted her petition, a second remand cannot be ruled out.

**F.      Overall Assessment**

In view of these *Jamal A.* factors, we hold that Ms. Leonteva's continued detention without additional process violates her Fifth Amendment rights: Five of the six factors weigh in Ms. Leonteva's favor; she has been detained for more than two years; Respondent has twice extended the administrative proceedings; and no specific schedule for resolving these issues has been set. Whether the government's appeals are reasonable or ultimately meritorious, Ms. Leonteva has been

---

[1] From November 2024 until February 2025, and again from August until November 2025.

[2] From February until August 2025, and again from November 2025 to the present.

subjected to indefinite detention, and indefinite detention is "a serious constitutional problem."
*Zadvydas*, 533 U.S. at 690.

**G.      Remedy**

In our previous order (dkt. 10 at 18–19), we explained the Fifth Amendment rationale entitling Ms. Leonteva to a bond hearing as protection against indefinite detention.  Ms. Leonteva's contention that she is entitled to immediate release is not availing; we disagree for the reasons explicated in that order.

To the extent Ms. Leonteva maintains that *Mathews v. Eldridge*, 424 U.S. 319 (1976), requires another analysis, *see* dkt. 11 at 3–4, we do not share that view. "Courts apply the *Mathews* test to resolve the question of 'whether the administrative procedures provided . . . are constitutionally sufficient.'" *Banda*, 385 F. Supp. 3d at 1106 (quoting *Mathews*, 424 U.S. at 334). Ms. Leonteva is presently being detained indefinitely without any procedural avenue available to her to seek release. *Mathews* "does not resolve the more fundamental issue" that this case presents, namely, "whether any procedure—such as a bond hearing—must be provided." *Id.* at 1106–07.

Regarding Ms. Leonteva's request that a specific burden of proof be crafted for the bond hearing (*see* dkt. 11 at 5,) we know of legal basis to do so. The Seventh Circuit has not addressed the question of who bears the burden of proof in an administrative bond hearing, and other circuits that have addressed the question have not been unanimous.  Therefore, we decline to prescribe procedures for Ms. Leonteva's bond hearing.

Our concern here is with ensuring that Ms. Leonteva be relieved of the continued injustice of her indefinite detention as discussed in *Zadvydas*. Thus, her bond hearing must be  procedurally adequate to protect her against (1) the punitive conditions of her continued detention, and (2) her

constitutionally protected right to avoid physical restraint without a finding of a "special justification," such as protecting the community or preventing flight. *Zadvydas*, 533 U.S. at 690.

### III. Conclusion

For the reasons discussed above and in our prior order, Ms. Leonteva's indefinite detention violates her Fifth Amendment protections entitling her to contest her continued detention at a bond hearing, *see* dkt. 10 at 18–19.

Ms. Leonteva's petition is **granted** to the extent that Respondents are allowed **seven days** to certify to the Court that the petitioner has (1) been released from detention, or (2) appeared for a bond hearing before an immigration judge consistent with Part II(G) of this order. Ms. Leonteva's petition is **denied** to the extent it seeks an order requiring her immediate release.

The **clerk is directed** to enter final judgment.

**IT IS SO ORDERED.**

Date:            3/27/2026

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

R. Jeffrey Lowe
KIGHTLINGER & GRAY, LLP (New Albany)
jlowe@k-glaw.com

Brittni Rivera
Kriezelman Burton and Associates
brivera@krilaw.com

Shelese M. Woods
DOJ-USAO
shelese.woods@usdoj.gov

8